# ROBERT A. MILLER, Receiver,

### *v.*

# NORTHERN ASSURANCE COMPANY.

---

CONDITIONS OF INSURANCE POLICY—STATUTES OF LIMITATION—EVIDENCE.

1. Reasonable conditions attached to policies of insurance are valid. A condition requiring the insured to notify the company of loss and submit proofs of same is reasonable and binding.
2. If a company makes no objections, within a reasonable time, to proofs of loss furnished it by the insured, such failure to object is a waiver of any insufficiency.
3. A condition in a policy barring insured from bringing suit upon same after expiration of three months from time when payment was refused, is valid; but, if the matter was in process of settlement, the time does not run. A waiver of limitation may be inferred from an offer to pay the claim.
4. An insurance company may waive the fifteen years' limitation prescribed by law for bringing suits on policies by an offer of settlement within that time.
5. Incendiarism by the insured vitiates insurance; but if the insured had no knowledge of the incendiary fire, and was no party to it, he is entitled to recover.

May 16, 1903.

---

*Mr. C. M. Boerman* for the plaintiff.

*Messrs. Dexter & Hord* for the defendant.

---

*Insurance—limitation of action.* The authorities relating to the validity and operation and effect of a stipulation limiting time for suit on insurance policy are fully presented and discussed in editorial note to Sample v. London & L.. F. Ins. Co. 47 L. R. A. 696.

HOLT, Judge, gave the following charge to the jury:

Gentlemen of the Jury:—You are entitled to the thanks of the court, the attorneys, and the litigants, for the careful attention you have given to the testimony and argument in this case. It now becomes my duty to instruct you as to the law, and which you are bound to accept; you, however, being the judges of what has been proven.

As you have already learned, this is an action upon a policy of insurance which was issued on May 19th, 1884, to Antonio José Amadeo, by the Northern Assurance Company, insuring some sugar works in the sum of $25,000, or £5,000 sterling; £2,400 being upon a sugar manufactory; £1,600 upon the machinery; and the remaining £1,000 upon a building for the deposit of rum; and which insurance was for one year from the date of the insurance.

This property was destroyed by fire on February 6th, 1885, within the period of the insurance. Attached to the policy were certain conditions which by law, when they are reasonable, control the parties in case of any loss. The principal defenses in this case are: (1) The failure by the insured to furnish proofs as to the loss within the time fixed in the conditions of the policy. (2) That this action is barred by lapse of time, and cannot be maintained. (3) That the insured caused the loss himself; in other words, that he brought about the loss through his own wrongful act, and cannot, therefore, recover.

There is no question from the testimony but what this property was, on February 6th, 1885, destroyed by fire; I mean, in the main destroyed by fire,—you are to judge of the extent of the destruction.

There was a condition in the policy,—and this, I say to you, is a condition authorized by law, that is, as to the notification of the fire and the furnishing of proofs, because the company,

in order to protect itself as to a loss, in order to ascertain the extent and nature of it and learn all about it, is entitled to notice from the insured in case a loss occurs; it is entitled, according to the conditions of its policy, to demand proofs of the character and nature of the loss. Your common sense will readily suggest to you very many reasons why the law authorizes this; why it is reasonable it should be so.

This policy provided: "9th. The insured suffering any loss or damage by fire on any property insured by this policy shall give notice thereof in writing soon thereafter to the company." (The only limitation there is that it be done soon after the loss. There is testimony tending to show, and you are the judges of that, that this company was notified of this loss within a day or two or very soon after it occurred, through notice to the general agents of the company, Messrs. Fedderson & Company.) "And, thereafter, as soon as the circumstances will permit, he shall present to the company a detailed statement, as it would be reasonable to require," (In some cases, of course, a more detailed statement could be presented than in others. If the fire be in a frame building, and it is entirely consumed, there could be very little statement of circumstances in connection with that.) "of all the different goods damaged or destroyed by the fire, specifying the real value of each at the time of the accident, presenting as proof, and under oath if required," (The company could require that if it wished.) "their books of account, and their justifying documents, proofs, and explanations, as could be reasonably required; and also, if the company requires it, shall present proofs that the damage or loss did not come by any cause inadmissible in the sixth article of these conditions; and until there have been presented such notice, and all accounts, proofs, and explanations, as indicated, the company cannot be required to make payment

Miller v. Northern Assurance Co.

of the loss and damages suffered. If the property insured by this policy is only partially damaged by fire, the insured shall not abandon it without consent of the company indorsed on the policy."

In other words, there was a condition in this policy that, as soon as reasonably could be done after the fire, the insured was to give notice to the company that there had been a loss. One reason, among others, for that, was that the company might send their agents there, if it saw fit, to investigate the matter, and look into it, and learn if it was an incendiary fire, and the extent of the loss. It was the duty of this insured to give notice, as soon as he reasonably could, of this loss. There is testimony tending to show that that was done; the court leaving it to you to judge of whether that has been proven or not.

There is also testimony tending to show that shortly after the fire—in a very short time, I do not recollect the time, but you will recollect it, a few days as I now recollect—the insured furnished the company a certain proof of loss or statement of loss, and it is admitted in evidence in this case and marked Exhibit CC for the plaintiff, in which was stated the loss; the figures being just the amount of the insurance upon the different buildings, the two buildings and the machinery. There was testimony in the case tending to show why these amounts were given. If you believe that these amounts were stated at the instance of any agent of the company, instead of the actual loss, then the company cannot complain. There is testimony tending to show that this statement was furnished, and also that another document or account or statement of loss was furnished; but this is not produced. There is testimony tending to show that the company, through its agents, having notice of this loss, sent someone there to look into it; and that the party or parties helped to make up the estimate or statement of loss with the insured;

and that the papers were prepared both by the company and by the insured. Whether this is really so or not is for you to determine from the evidence; but I say to you as a matter of law that if this insured, Dr. Antonio Amadeo, furnished a statement of loss within a reasonable time,—a reasonable statement of the loss,—and especially if the company by its appointed person assisted in making that statement, and the company received the statement, and made no objection to it within a reasonable time, that was, I tell you, a sufficient statement of the loss; but if they received that statement from Amadeo alone, and made no objections to it within a reasonable time, if they delayed making objections to it for an unreasonable time, it was their duty to do it as soon as they could reasonably examine; and if they failed to notify him of any further statement or proof of loss required, then that was sufficient under the law, and he was not required to make any further statements; and upon such statement, if made, he had the right then to insist upon the payment of his loss unless he had forfeited his right to it in some other way. If an insurance company objects to proofs of loss on account of defects in them, it must specify what those defects are; it must do that also within a reasonable time after the proof of loss is received.

Another defense in this case is that this action is barred not only by the conditions in the policy, but by the general provisions of the law. Originally there were no limitations to actions at all. They are creations either of contract between the parties or of statute. Originally a man could bring a suit at any time even if his cause of action had existed for a hundred years. There was no limitation. The lawmakers, in their wisdom and for the sake of repose in the community, finally began to adopt statutes of limitations, in order that a man should use reasonable diligence in the prosecution of his claims; and if not, he

lost the right to do so. A great many reasons exist for this. A man lets a cause of action rest a long time; the witnesses die or go beyond the sea; the evidence as to the claim is lost; and therefore the lawmakers began to adopt statutes of limitations.

In this contract of insurance there was this provision; and I say to you that the parties had the right, in their contract, to contract that the cause of action should be barred within a certain length of time, otherwise, if it was not barred, and there was no waiver of it by the insurance company in any way, the party would still be barred from bringing an action after a certain time by law.

"11. If the claim shall be objected to as fraudulent; or in case there shall appear any false statement knowingly made; or if the accident were produced directly or indirectly by means, designs, or voluntary act of the insured; or in case there is no claim presented within three months after the fire; or if after having made the claim and being refused, there would not be insisted upon judicially within three months after the refusal,—then, in each one of these cases, the insured shall lose his right to any indemnification."

The parties saw fit, in their contract, to provide that, if the claim was not insisted upon judicially, that is, by suit, within three months after the refusal to pay, that then the party should have no right to bring his action. It is for you to determine whether, and at what time, there was a refusal to pay this claim or to settle it. This clause I have just read provides that in case "no claim [is] presented within three months after the fire." This fire occurred, as I have already stated, on the 6th of February, 1885. Under the condition of the policy that, if there was no claim presented within three months from that time, or by the 6th of May, 1885, why then the party could not insist upon his claim; but it is for you to determine from the

testimony whether there was no waiver of that judicial claim or of any action. If the matter was in process of settlement, if the insured had reasonable grounds to believe from the action and conduct of the company or its agents that the claim would be settled,—that there would be some settlement made of it,— then he is not barred by the fact that he did not present this claim judicially or bring a suit upon it within three months after the loss. "If there is no claim presented within three months after the fire then the party cannot recover." It is for you to determine from the testimony whether this claim was presented within three months after the fire by the insured party.

Next. If after having made the claim it was not insisted upon judicially within three months after the payment of it was refused, then the party forfeited his right to insist upon the payment of it.

It is for you to determine from all the testimony whether this claim was presented by the insured as is claimed upon the part of the plaintiff here. It is for you to determine whether this suit was brought within three months after the refusal to pay it. But, as to each one of these conditions, there may have been a waiver by the company by its conduct and acts, so as to lead a reasonable man to believe under all the circumstances that there would be a settlement of the claim; and in that event this limitation does not apply. A waiver of a limitation may be inferred from an offer to pay in settlement of the claim. A request by the company for delay in the investigation of the claim, or whether they will pay it or not, may operate as a waiver of any limitation. In other words, a limitation by contract between the parties, and even by law, is liable to be extended or defeated by the act of the parties defendant, or by their conduct, that prevents the plaintiff from presenting the claim or suing within a certain time. Whether there has been or was any such waiver, under all

the circumstances, is for you to determine from the testimony. If a company holds out hopes of amicable adjustment, and the insured has reasonable grounds to believe from the statements or conduct of the company's agents that there will be a settlement, this would be a waiver of the limitation. If proofs are furnished and additional ones are asked, and in this way more than three months expire; in other words, if the company, by its agents, led the insured to believe that the claim was not sufficient, and that other proofs would be required, and in that way more than three months elapsed,—then that was a waiver of that three months' provision. If the delay be induced by the acts or conduct of the company, and they be such as to lead a reasonable man to think that no further proofs are required, or that no suit would be necessary, that operates as a waiver of the limitation, whether it was a limitation named in the policy, or a limitation provided by law.

There was not only a limitation named in this contract, but there was a limitation provided by law of greater length of time. This fire occurred on the 6th day of February, 1885. Proofs of loss were presented within a short time thereafter, as to which you are to judge from the testimony. This loss became payable, if payable at all, within a reasonable time after the proofs of loss were furnished to the company and the company had a reasonable time within which to examine them, and determine whether it would pay the liability if one existed. That is when the insurance became due. As a matter of law, if, after that insurance so became due, the insured failed for a period of fifteen years to insist, by an action or suit, upon the payment of that insurance,—and this suit was brought on April 23d, 1902, and that is more than the fifteen years from the time when these proofs were presented, as you will readily see, —if the insured failed to bring his action within fifteen years

Miller v. Northern Assurance Co.

from the time the loss became due, then he is barred by limitation, unless there was some waiver by the company upon its part of this bringing of the action within the period I have already stated to you.

If during that period there was a demand of payment, and an offer by the company to pay so much in settlement of the loss, and a recognition of it to a certain extent, that then that took the matter out of the operation of this statute of limitations; and unless fifteen years expired from the time of any such demand and offer to pay, then the party is not barred by the statute of limitation from bringing his suit.

If you believe from the testimony that the company had a general agent to settle this loss,—a general adjuster as to this loss—an adjuster authorized to settle this loss,—and that a demand of payment was made on that adjuster within fifteen years prior to the bringing of this suit, and he proposed to pay a certain sum in the settlement of this loss, or perhaps in connection with other losses,—that then that would take this matter out of the statute of limitations. It matters not, in law, if in point of fact, between him and the company, he had ceased to be its agent as to that transaction; unless he, being the party authorized by the company to act in the matter, and unless knowledge had been brought home to the insured, Dr. Amadeo, that he was no longer the agent to settle that transaction, then they are bound by his actions in the matter. If the insured knew that his agency had terminated at that time, then any offer to him, or demand made on him, would not amount to anything; but unless the insured knew at that time that the power of that general agent or adjuster to adjust that loss had terminated and ended, then he had the right to deal and act with him, and make a demand of payment on him, and then any offer by him to pay, or any demand upon him to pay, was a demand upon, or offer

Miller v. Northern Assurance Co.

by, the company to settle that loss. There is testimony tending to show that there was a demand of settlement made in the year 1887, in May, I believe, on the gentleman who had been the agent of the company to adjust and settle this loss. You are to judge by the testimony whether there was any such offer, and if so, what that offer was. There is some testimony tending to show that there was an offer made of settlement about that time. It is said, upon the other hand, that there was a mere offer of kindly services to try and bring about an adjustment. It is for you to determine whether it was an offer of settlement. If there was an offer of settlement at that time, then that was within fifteen years prior to the bringing of this action; and the limitation of fifteen years would not apply to the case, if the offer of settlement was made.

There is testimony tending to show that a party went to London in 1898, before the fifteen years had expired from the time when this payment of loss was due; that before he went he had a talk with Lucas Amadeo in reference to going; that he had a power of attorney, I believe, or was authorized by Dr. Antonio Amadeo, to try and get a settlement of the matter; that he was the secretary of the company, and I believe—but you are to determine from the evidence—the attorney of the company. Perhaps he made a demand of payment and the secretary referred him to the attorney and the attorney refused to listen to him. If you believe that within the fifteen years there was a demand of payment of an agent of this company authorized to attend to a settlement of this claim, and an offer to pay by that agent in any way, that then would take this matter out of the statute of limitations; and the plaintiff would be entitled to insist upon the payment of this insurance unless, however, the insured, Dr. Amadeo, brought about this loss by his own conduct. I need not tell you that it is the law that if I insure my house in a com-

pany, and after doing so I set fire to the house, and burn it up, or procure it to be done, I ought not to recover the insurance. A recovery under those circumstances would be an outrage upon the company. Now where charges of this kind arise in a case, the jury should investigate them carefully. They involve a great deal to the people. They involve not only the amount of money, but these charges are serious ones to the insured. Upon the other hand, you must recollect that the insurance company is removed from the scene of action; the insured is in charge of the property; the company is not there; the insured, if he be disposed to do so, has opportunity to commit a very great wrong against the company, and really a wrong against himself, if he do anything of that kind. You are to consider all the circumstances; and where any such claim as that is made, the jury should consider it carefully.

This policy provides—and not only the policy but the law also—that, "or if the accident were produced directly by means, designs, or voluntary acts of the insured." Mind you, although you may believe from the testimony that this fire was of incendiary origin, yet, if Dr. Antonio Amadeo had no knowledge of it, that is, when I say "knowledge" I mean had no knowledge in any way of procuring or instigating it or bringing it about, then he would still be entitled to recover; provided he is not barred by limitations, or proper proofs were not presented. He would still be entitled to recover although the fire be incendiary, but by somebody else. Under the conditions of this policy, and under the general law and the law of common sense and good reason, if this fire was instigated, or was to any extent brought about and produced, by the act or conduct or at the instance of the insured party, Dr. Amadeo, then he ought to go out of court, and ought not to be allowed to recover a cent, but in fact, perhaps, ought to be in the penitentiary. You are the judge

Miller v. Northern Assurance Co.

of the testimony upon that subject. You are the judges of the witnesses and the credibility to be given each witness. The court does not judge of that. A witness, for instance, may be largely interested in the matter. His character may be involved; not only that, but financially he may be involved. Upon the other hand, some witnesses may not be friendly to the party as to whom they testify; and they may be induced by motives of spite, or something of that kind, to testify against him. You are to judge from all the testimony, from the situation of the parties, from the circumstances, from the motives that ordinarily move men, of the weight that you will give to the testimony of each witness in the case. After considering that you are to determine what has been proven by the testimony, and what is true, and what is not true.

If you find for the plaintiff in this case, you would find under the terms of this policy the value of the property destroyed or damaged by the fire, not to exceed in any event what it would have cost for the company to have re-established it, to have put it back there in the same condition it was before being destroyed.

The 10th condition of the policy provides: "The real value of the property destroyed or damaged by fire will not exceed in any event that which it would cost to the insured to re-establish it; and in case the value of such property has been diminished by use or otherwise, there shall be deducted from the cost of repairs the corresponding amount in order to determine the real value."

In other words, if the injury was only to a small amount, you could not find more than the amount of that injury, or, in any event, more than what it would cost to go and put the property in the same condition it was before the fire.

Insurance is not made for the purpose of a party making a profit out of it. A man is not expected to get rich out of a policy

of insurance. Insurance is only to indemnify a man and make him whole. That is the purpose of it: To put him back where he was, either by the payment of money or the replacing of the building. If you find for the plaintiff, the limit of your verdict would be what it would cost to have repaired and re-established these two buildings and this machinery; the deposit of rum and the machinery house and the machinery,—what it would have cost, from the testimony, to have put them back in the condition they were before being damaged, and not exceeding also the amount claimed in the declaration. If you find for the plaintiff, you may or not, in your discretion, give interest, not exceeding 6 per cent, upon the amount you may find from the time when this insurance became due. If you find for the plaintiff and find interest in addition, you would add that interest to the amount of the principal, and your verdict would be, "We, the jury, find for the plaintiff in damages," so much; and one of you sign as foreman.

If you should find for the defendant you would say, "We, the jury, find for the defendant."

I say further to you, gentlemen, that if you believe from the evidence a demand was made by Dr. Antonio José Amadeo to the defendant company at any time for payment, yet if you further believe from the testimony that at the time of the demand Dr. José Antonio Amadeo was not the owner of this policy of insurance, or had no interest in it, that then that demand would mean nothing. The testimony tends to show, however, that that demand was made in the year 1887. I say to you as a matter of law that there is no testimony in this case that at that time he was not interested in this insurance policy. There is some testimony tending to show—and that is for the court to determine—that in the year 1900 or 1901, by the decree of some court, the policy was sold away from him.

Miller v. Northern Assurance Co.

The court expects of each of you a careful consideration of this case, as I know you will give it. I expect of each juryman an honest opinion and independence of thought, that each man should think for himself; but I suggest that you interchange views about this matter, that you will recognize and listen to each other's opinions, and you will hear what any other member of the jury has to say, and try to reconcile your views and come to a conclusion.